ELIZABETH A. BUVINGER, Respondent, *v.* RALPH R. BUVINGER, Appellant, Impleaded with Another.*

First Department, November 13, 1942.

*Arthur L. Obre* and *Robert R. Bauman* for appellant.

*John Francis Spellman* for respondent.

CALLAHAN, J.  The plaintiff and defendant were married in New York State on January 13, 1920.  They took up residence in Atlantic City, N. J., where they lived together for about one year, after which they separated.  New Jersey is the only State where they acquired any matrimonial domicile while living together.  In 1922 the husband brought an action for divorce against the wife in New Jersey, on the ground of adultery.  The wife counterclaimed for divorce.  Although there was some dispute as to the basis of the wife's counterclaim, the trial court found that it was based on a charge of adultery.  In any event no claim of abandonment or desertion appears to have been made by the wife in that litigation.  An order for temporary alimony was made in the New Jersey action in 1922.  It directed the husband to pay the wife twenty-five dollars a week. Thereafter the action was permitted to lie dormant for many years. The husband continued to pay the alimony ordered, with more

---

* Affg. 178 Misc. 209, on appeal from order.

or less regularity, until 1936. These payments the husband referred to as "suit money." These moneys were usually received by the wife through the mail at Scranton, Pa., where her family lived, or in letters addressed to her in care of "General Delivery, City Hall Annex, New York City."

The wife had taken up residence in New York City in 1924, and, although she continued to live at one place from that year on, she never advised her husband of her actual address.

The husband was a newspaper engineer, whose work consisted of overhauling newspaper machinery. It was necessary for him to travel from place to place to obtain work. Between jobs he returned quite frequently to Atlantic City or vicinity, where he had been born, and where he continued to maintain a residence.

In 1936 the husband obtained work in Florida, and went there intending to establish his domicile. He instituted suit in the courts of that State for divorce, serving his wife by publication. The wife was never within the State of Florida, and did not appear in the action. Judgment was entered against her by default.

The parties agree that the requirements of the Florida law as to duration of the husband's residence in that State were complied with. We have no evidence as to whether the Florida court inquired into the circumstances of the separation of the parties, or the question of the right of the husband to establish the matrimonial domicile in that State. After obtaining the judgment of divorce in Florida the husband married one Mabel W. Connover, who has been named as co-respondent herein. He stopped paying alimony to plaintiff at the time of the commencement of the Florida action. Plaintiff later brought this action to declare the Florida divorce null and void, and to obtain a divorce based on defendant's alleged adulterous intercourse with Mabel W. Connover.

Shortly prior to the initiation of the present suit, plaintiff made application to the New Jersey courts for certain relief, including a decree declaring the Florida divorce invalid. This relief was denied her.

The question of law presented in this case is whether under the circumstances involved herein the courts of this State will declare the Florida divorce invalid. This, both parties agree, depends on whether the matrimonial domicile of the parties followed the husband to Florida, so as to permit the Florida courts to acquire jurisdiction of the matrimonial *res*. Neither side has attempted to establish the New Jersey rule of public

policy applicable towards a divorce of the nature of the present Florida decree. Again, they both seem to agree that the New York rule of public policy would apply here. The parties further agree that the determination of the issues of law as to domicile rests, in turn, on the determination of the issue of fact as to whether plaintiff abandoned defendant, or whether defendant abandoned plaintiff in Atlantic City in 1921. Neither side contends that there was any separation by mutual consent.

On the issue as to who was guilty of abandonment, the trial court found in favor of the plaintiff.

The sole contention raised by appellant on this appeal is that the finding of the trial court as to the fault for abandonment was so contrary to the weight of the evidence that it should be reversed. We agree with this contention of appellant for we find that the weight of the credible evidence in the case is clearly in the husband's favor on the disputed issue.

Aside from the circumstances bearing directly on the issue of abandonment, which evidence we shall mention in detail later, we find that the credibility of the wife's testimony was so materially weakened that it was improper to determine the closely contested question of abandonment in her favor on her uncorroborated testimony.

It will serve no useful purpose to set forth at length the items of testimony which reflected unfavorably on the credibility of the wife's testimony. It is sufficient to say that cross-examination demonstrated that in various business transactions she had been entirely lacking in common honesty. She admitted frequently drawing and cashing checks on non-existent bank accounts. She used similar checks for the purpose of purchasing automobiles. In the application for credit in purchasing these automobiles she made many deliberately false statements. In addition plaintiff was entirely devoid of frankness as to numerous matters on which she was examined concerning occurrences both before and at the time of her marriage.

Considering the stories of the respective parties on the main issue of the abandonment, we find that the testimony of the husband, supported in some respects by the testimony of a disinterested witness, was far more credible than that of the plaintiff. It appears that shortly after the marriage, and while the parties were living together in Atlantic City, the husband opened a bank account, upon which he gave the wife the right to draw checks to pay household bills. He also gave her a sum of money to pay an obligation contracted by her before their marriage. After a few months the husband found that the wife

was making extensive withdrawals of cash from the bank account for her own use, instead of using same to pay household bills. Thereupon in December, 1920, the wife's right to withdraw money from the bank was revoked.

On Christmas Day of 1920 the parties visited their respective parents — plaintiff going to Scranton, and the defendant going to Philadelphia. It is conceded that they met by appointment in Scranton later on that Christmas Day. Their separation occurred shortly after that date. Plaintiff tells various and conflicting stories as to the circumstances of the parting. She first testified that her husband said he was going away without her, and that he told her to sublet the apartment and stay with her mother. Later she testified that her husband went to Philadelphia, and returned to their apartment in Atlantic City on January 3, 1921, where he remained for several days.

Plaintiff knew that her husband was working in Elizabeth, N. J., during this period, and admitted visiting him there once between January 6, 1921 and February 12, 1921. She claims, however, that on that occasion she went to Elizabeth and returned to Atlantic City the same day.

She also testified that her husband had been accustomed to return home to Atlantic City on weekends while he was working in Elizabeth. Plaintiff testified that at her husband's request she forwarded his clothing to Elizabeth, in January, 1921. Later she testified that this had occurred in February, 1921.

Plaintiff appears to have sublet the apartment of the parties on several occasions. At the time of the first subletting, which was about February 12, 1921, plaintiff signed the sublease, although the main lease was in her husband's name at that time.

Plaintiff testified that she had placed some of her husband's effects, including a typewriter, in a storage warehouse. It later appeared that these effects had been removed by her from her apartment to that of Mrs. Clara E. Rink. In May of 1921, plaintiff called at Mrs. Rink's home, accompanied by two men, and took this property away. She had apparently negotiated a sale of some of her husband's clothing to one of these men. Although plaintiff denied having refused her husband access to her former apartment, Mrs. Rink, who was then subtenant of the apartment, testified, that she had refused defendant such access at plaintiff's instructions.

At the time that the apartment was sublet in February, 1921, plaintiff went to live with a Mrs. O'Connor, who also resided in Atlantic City. Plaintiff denied her husband's story that he had come to Mrs. O'Connor's home to see plaintiff. She admitted

that he had called there shortly after the separation, but said that he desired only to talk with Mrs. O'Connor.

Defendant's contentions were that up to February 12, 1921, he had been living with his wife. He had been working in Elizabeth, and came home weekends. Some weekends his wife visited him in Elizabeth. She had lived with him there for several days as late as February 6, 1921. He claims that the first notice that he had received of any separation was on February 12, 1921, the day on which his wife telephoned and said she had sublet the apartment. He claimed that this was without his consent. After receiving this information, he immediately returned to Atlantic City, and talked with his wife at Mrs. O'Connor's home. His wife thereupon refused to live with him, or go away with him. Shortly thereafter he again called to see plaintiff at Mrs. O'Connor's home, but his wife had left without leaving any information as to her whereabouts. Defendant said he then took a business trip to Meridian, Miss., where he remained several months. After the termination of that trip he came back to his apartment to find Mrs. Rink in possession, and she refused him admittance. In the meantime, he said, that he had sent his wife twenty-five dollars a week. Though the wife denied receiving any money during this period, a letter dated May 19, 1921, was introduced in evidence which showed that a remittance of such amount had been made from Meridian.

After his return from the south (June, 1921), the husband found that his furniture had been placed in a storage warehouse in Atlantic City. He was compelled to replevy it.

Upon the record as a whole, we determine that the finding of the trial court, that the defendant abandoned his wife on January 6, 1921, was unwarranted. On the contrary, the testimony indicates that plaintiff abandoned her husband on or about February 12, 1921.

The defendant also appeals from an order denying his motion for a jury trial of the issue of adultery. As the issue as to whether defendant's relations with Mabel W. Connover were lawful or meretricious depended solely on the validity of defendant's marriage to said Connover, we think it was proper to refuse to frame issue on the question of adultery. The order appealed from should, therefore, be affirmed.

The judgment appealed from should be reversed without costs and a new trial ordered.

MARTIN, P. J., TOWNLEY, GLENNON and COHN, JJ., concur.

Judgment unanimously reversed without costs and a new trial ordered. Order unanimously affirmed.